```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

**RICHARD W. CARREL,**

       **Plaintiff,**

  vs.                                          Civil Action 2:12-cv-1028
                                                            Judge Smith
                                                            Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on *Plaintiff Richard W. Carrel's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 14, *Defendant's Memorandum in Opposition*, Doc. No. 19, and *Plaintiff Richard W. Carrel's Reply to Defendant's Memorandum in Opposition*, Doc. No. 20.

Plaintiff Richard W. Carrel filed his applications for disability insurance benefits and supplemental security income on March 6, 2009, alleging that he has been disabled since December 31, 2006. *PAGEID* 171, 178. The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on May 13, 2011, at which

plaintiff, represented by counsel, appeared and testified, as did George Coleman III, who testified as a vocational expert. *PAGEID* 75-76. In a decision dated July 14, 2011, the administrative law judge concluded that plaintiff was not disabled from December 31, 2006, through the date of the administrative decision. *PAGEID* 67. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 21, 2012. *PAGEID* 45.

Plaintiff was 51 years of age on the date of the administrative law judge's decision. *See PAGEID* 67, 171. Plaintiff has a limited education, is able to communicate in English, and has past relevant work as a dump truck driver and golf course lawn keeper. *PAGEID* 65. Plaintiff was last insured for disability insurance purposes on December 31, 2012. *PAGEID* 57. He has engaged in substantial gainful activity during the following periods: May 2008 through October 2008; May 2009 through October 2009; and May 2010 through October 2010. *Id*. Plaintiff has not engaged in substantial gainful activity since October 2010. *Id*.

**II. Medical Evidence**

Plaintiff has treated with Andy C. Lee, M.D., since some time prior to 2006. *See PAGEID* 327. On October 6, 2006, Dr. Lee opined that plaintiff has "significant degenerative osteoarthritis and degenerative disk disease in both the cervical and lumbar spine." *PAGEID* 327. Dr. Lee further opined that plaintiff "would be best served by no longer continuing" in his profession as a truck driver

for a stone quarry because "the constant jarring and pounding on the spine is not in his best interest both medically and physically." *Id*.

Plaintiff treated with Dr. Lee for, *inter alia*, elbow pain, *PAGEID* 329, 347-48 (Dec. 2006), 351 (Oct. 2007), hernias, *PAGEID* 349 (Mar. 2007), back pain, *PAGEID* 342 (Oct. 2006), hemorrhoids, *PAGEID* 342 (Oct. 2006), rashes and sores, *PAGEID* 350 (May 2007), chronic obstructive pulmonary disease ("COPD"), *PAGEID* 452 (Aug. 2010), 451 (Nov. 2010), joint pain in his hips, neck, and shoulders, *PAGEID* 353 (Nov. 2008), diabetes, *PAGEID* 351 (Oct. 2007), 354 (Dec. 2008), 355 (Jan. 2009), 414 (Aug. 2009), 453 (Apr. 2011), depression, *PAGEID* 414 (Aug. 2009), 417 (Oct. 2009), seizures, *PAGEID* 356 (Jan. 2009), 357 (Mar. 2009), and sleep apnea, *PAGEID* 353 (Nov. 2008). On February 4, 2011, Dr. Lee treated plaintiff for low back pain, hypertension, and muscle spasms. *PAGEID* 450. At that time, plaintiff reported doing "fairly well" overall, although he complained of muscle spasms in his legs and hands. *Id*. On examination, Dr. Lee noted that plaintiff's left arm was neurovascularly intact with good grip strength; there was a "weakly positive Phalen and Tinel sign." *Id*. Dr. Lee diagnosed carpel tunnel syndrome in both hands, greater on the left than on the right, and hypertension. *Id*.

In February 2011, Dr. Lee diagnosed diabetes, neuropathy, osteoarthrosis, COPD, diabetic retinopathy, and depression. *PAGEID* 457. He identified plaintiff's symptoms as "loss of feeling in lower legs and feet, shortness of breath, cough, fluctuating blood sugars, hand tremors, mood swings," "low back pain, muscle spasms in both legs, [and] muscle spasms in hands." *Id.* Dr. Lee opined that plaintiff

3

frequently has pain severe enough to interfere with attention and concentration, has marked limitations in his ability to deal with work stress, and that his medication makes him drowsy. *PAGEID* 458. Plaintiff could sit for one hour before needing to stand or walk, and could sit for a total of two hours in an eight hour workday,  for 15 minutes, more than three times in an eight hour workday. *PAGEID* 458-59. Plaintiff could stand or walk for one hour before needing to "l[ie] down or recline[e] in a supine position." *Id.*  He could stand or walk for a total of two hours in an eight hour workday.  *Id*. Plaintiff could lift six to 10 pounds frequently, 11 to 20 pounds occasionally, but could never lift 21 to 50 pounds. *PAGEID* 460. Plaintiff could occasionally balance when standing/walking on level terrain, could never stoop, could never rotate his neck right or left, had no forward or backward flexion, could occasionally reach in any direction, and could occasionally handle by seizing, grasping, turning or otherwise working primarily with his whole hand. *Id*.  Dr. Lee further opined that plaintiff's conditions and restrictions have persisted since at least 2006, and that plaintiff's impairments or treatments would require him to be absent from work about twice a month. *PAGEID* 461.

    In June 2009, Herbert A. Grodner, M.D., examined plaintiff, *PAGEID* 365, and noted normal toe and heel walking, decreased sensation over the ulnar aspect of the left forearm and hand, 5/5 muscle strength in all muscle groups, normal grasp and manipulation, normal range of motion in all joints and normal gait. Plaintiff could partially squat. *PAGEID* 366.  Dr. Grodner also noted that plaintiff

4

was morbidly obese and had a history of neck and back pain but no surgery, and that his diabetes is "under relatively good control, without complication." *Id*. Dr. Grodner opined that plaintiff

> might have some difficulty with sustained climbing, kneeling, bending, walking, and standing over a long period of time. He may also have difficulty bending and lifting more than 25 or 30 pounds repetitively. He also would have some difficulty using his hands in a repetitive fashion. However, I do feel that he could perform sedentary activity. His morbid obesity may prevent him from performing certain types of activity.

*PAGEID* 367.

Dr. Grodner supplemented his report to reflect a March 2010 pulmonary function study, which showed mild obstructive airway disease, *PAGEID* 447, and normal x-rays of the knee. *PAGEID* 440. X-rays of the lumbar spine revealed normal anatomical alignment with some narrowing of the intervertebral spaces in the upper lumbar vertebrae with anterior osteophyte formation. *Id*. There was no evidence of compression fracture, spondylosis, or spondylolisthesis. *Id*.

In late 2009, after plaintiff had reported syncopal episodes, Dr. Lee referred plaintiff to Robert J. Mazo, D.O., for evaluation. *PAGEID* 356-57, 391. An EEG was normal and an MRI of the brain revealed no "overt pathology;" plaintiff's neurological status was stable. *Id*. A 24-hour ambulatory EEG was also "essentially normal." *PAGEID* 389-90. Dr. Mazo diagnosed r/o seizure disorder. *PAGEID* 392.

Michael Stock, M.D., a state agency physician, reviewed the record and, on July 18, 2009, completed a physical residual functional capacity assessment. *PAGEID* 373-80. According to Dr. Stock, plaintiff could perform light work, could occasionally lift and/or

carry 20 pounds, could frequently lift and/or carry 10 pounds, could stand and/or walk for a total of about six hours in an eight hour workday, and could sit for a total or about six hours in an eight hour workday. *PAGEID* 374, 379. Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. *PAGEID* 375. Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. *PAGEID* 377.

Myung Cho, M.D., reviewed the record and, on February 25, 2010, affirmed Dr. Stock's assessment. *PAGEID* 419.

Mark D. Hammerly, Ph.D., performed a consultative psychological evaluation on January 4, 2010. *PAGEID* 402-09. Plaintiff reported "no problems getting along with people on the job, no problems with work speed, quality, or understanding unrelated to his medical issue(s)." *PAGEID* 404. Plaintiff's mood was dysphoric and his affect was constricted and sometimes tearful. *PAGEID* 405. There were no signs of anxiety and plaintiff's mental control, concentration, and memory were "grossly intact." *Id*. Dr. Hammerly diagnosed an adjustment disorder with depressed mood and assigned a global assessment of functioning score ("GAF") of 60.[1] *PAGEID* 407-08. Dr. Hammerly characterized plaintiff's ability to relate to others, including to fellow workers and supervisors, as mildly impaired; plaintiff would

---

[1] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . .

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

6

"be able to relate sufficiently to coworkers and supervisors for simple, repetitive tasks, which did not require complicated or detailed verbal instructions and procedures." *PAGEID* 408. Plaintiff's mental ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. *PAGEID* 409.  Plaintiff had no impairment in his ability to understand, remember, and follow instructions or in his ability to maintain attention, concentration, persistence, and pace sufficient to perform simple, repetitive tasks.  *PAGEID* 408-09.

Cynthia Waggoner, Psy.D., completed a mental residual functional capacity assessment and psychiatric review technique form on February 26, 2010.  *PAGEID* 420-37.  According to Dr. Waggoner, plaintiff was moderately limited in his ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (5) accept instructions and respond appropriately to criticism from supervisors, and (6) respond appropriately to changes in the work setting.  *PAGEID* 420-21.  Plaintiff was not significantly limited in 14 areas of functioning but would have moderate difficulty in maintaining concentration, persistence, or pace, and mild restrictions in activities of daily living and in maintaining social functioning. *PAGEID* 434.

**III. May 13, 2011 Administrative Hearing**

Plaintiff testified at the May 13, 2011 administrative hearing that he had worked up to 32 hours per week at a golf course from May through October every year since 2007. *PAGEID* 82. In that job, plaintiff cut grass, using a riding mower, from approximately 6:00 a.m. to 1:00 p.m. with two 30-minute breaks and four to five seven-minute breaks. *PAGEID* 82-85.

Plaintiff testified that he cannot work fulltime because of back pain, arthritis, rheumatoid arthritis, osteoarthritis, and depression. *PAGEID* 85. His back pain occurs daily, is constant and lasts all day. *PAGEID* 85-86. He uses a heating pad, but nothing completely alleviates the pain. *PAGEID* 86.

Plaintiff also reported COPD, emphysema, and difficulty concentrating. *PAGEID* 88-89. His blood pressure and diabetes were under control and his depression was "sort of control[led]" by medication. *PAGEID* 87-88. He has never seen a psychologist or psychiatrist; he treats primarily with Dr. Lee. *PAGEID* 87-89.

Plaintiff sleeps eight to 10 hours per night, using a CPAP machine. *PAGEID* 91. He is able to cook meals, wash dishes, drive to work, and go grocery shopping, but his wife helps him put on his socks and shoes. *PAGEID* 91-93. Plaintiff descends stairs sideways "because of the movement in [his] back." *PAGEID* 93. He can lift 20 pounds, walk five to 10 minutes before experiencing shortness of breath, stand for 10 minutes, sit for 15 minutes, and walk for one hour total, stand for 45 minutes total, and sit for six hours total throughout an eight hour day. *PAGEID* 95-96.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge. In response, the vocational expert testified that such a claimant could not perform plaintiff's past relevant work but could perform such jobs as storage facility rental clerk (990 jobs locally; 147,450 jobs nationally); warehouse checker (24 jobs locally; 5,329 jobs nationally); and factory laborer (278 jobs locally; 33,950 jobs nationally). *PAGEID* 101-03.

**IV. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the cervical and lumbar spine, diabetes, and obesity. *PAGEID* 58. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC for
> lifting up to 20 pounds occasionally; lifting/carrying up to 10 pounds frequently; standing/walking for about 6 hours and sitting for about 6 hours in an 8 hour work day with normal breaks; unlimited pushing or pulling; occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; simple and somewhat more detailed one and two step instructions; and a sit/stand option.

*PAGEID* 60-61. Although this RFC precluded plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy, including such jobs as storage facility rental clerk, warehouse checker, and factory

laborer. *PAGEID* 65-66. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from December 31, 2006, through the date of the administrative decision. *PAGEID* 67.

**V.   Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge improperly evaluated the medical evidence of record. Plaintiff specifically argues that the administrative law judge erred by failing to follow the treating physician rule when evaluating the February 2011 opinion of Dr. Lee. *Statement of Errors*, pp. 8-10. The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.,* reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at

11

*5 (July 2, 1996)).  This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Lee has treated plaintiff regularly since at least 2006 for a variety of ailments.  Dr. Lee commented in February 2011 that plaintiff's frequent pain interferes with his attention and concentration; plaintiff is markedly limited in his ability to deal with work stress.  *PAGEID* 458.  According to Dr. Lee, plaintiff can sit for one hour before needing to change position, can sit for only a total of two hours in an eight hour workday, can stand or walk for only one hour before needing to "l[ie] down or recline[e] in a supine position."  *PAGEID* 458-59.  He can stand or walk for a total of two hours in an eight hour workday,  can lift six to 10 pounds frequently, 11 to 20 pounds occasionally, and never lift 21 to 50 pounds.  *PAGEID* 460.  Plaintiff can occasionally balance on level terrain, can never stoop or rotate his neck or engage in forward or backward flexion; he can occasionally reach and can occasionally handle by seizing, grasping, turning or otherwise working primarily with his whole hand.  *Id*.  Dr. Lee further opined that plaintiff's conditions and restrictions have persisted since at least 2006, and that plaintiff's impairments or treatments would require him to be absent from work about twice per month.  *PAGEID* 461.

The administrative law judge gave "little weight" to Dr. Lee's opinions because they are "not supported by the evidence in the record." *PAGEID* 64. The administrative law judge provided specific reasons for assigning little weight to Dr. Lee's opinion:

> First, the claimant has been engaged in work activity since 2007 that greatly exceeds Dr. Lee's limitations. As mentioned previously, the claimant is working as a golf course grounds keeper and his job duties include riding a rough mower outdoors in sometimes very hot weather from 6am to 2pm on a daily basis. In addition, the claimant has worked in such a capacity since 2007 with no evidence of problems dealing with work stress or his co-workers and supervisors. Second, Dr. Lee's opinion contrasts sharply with the objective medical evidence in the record, which includes laboratory tests and medical signs from Dr. Grodner's examination. Third, Dr. Lee's opinion appears to rest at least in part on an assessment of impairments outside his area of expertise. Dr. Lee is a family practitioner and not a specialist in the area of psychiatry, psychology, neurology, or orthopedic medicine. Lastly, Dr. Lee apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seems to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

*PAGEID* 64-65.

The administrative law judge's analysis of Dr. Lee's opinion does not violate the treating physician rule. The analysis is sufficiently specific as to the weight given to Dr. Lee's medical opinion and the reasons for assigning that weight. The administrative law judge expressly addressed the length, nature and extent of the treatment relationship, Dr. Lee's medical specialty, the extent to which Dr. Lee's opinion is (or, more precisely, is not) supported by the evidence, and the consistency of the opinion with the record as a whole. Under the circumstances, a formulaic recitation of factors is

not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Further, the administrative law judge's reasons for assigning little weight to Dr. Lee's opinion are supported by substantial evidence. Significantly, Dr. Lee's February 2011 opinion is inconsistent with both the objective medical evidence and plaintiff's own testimony at the May 2011 administrative hearing. Dr. Lee opined that plaintiff could sit for only a total of two hours in an eight hour workday, *PAGEID* 458-59, but plaintiff himself testified that he could sit on a riding lawn mower for up to six hours and that he had been doing so as a part-time employee at a golf course from May through October every year since 2007. *PAGEID* 82-85. There is no evidence, moreover, that plaintiff needed to lie down or recline in a supine position, as Dr. Lee had opined. *See PAGEID* 459. There is likewise no evidence that plaintiff had problems dealing with work stress or with his co-workers. Indeed, plaintiff reported in January 2010 that he had no community problems and "no problems getting along with people on the job, no problems with work speed, quality, or understating unrelated to his medical issue(s)." *PAGEID* 403-04.

In a related argument, plaintiff contends that the administrative law judge "substitute[ed] her own medical judgment as a reason to reject" Dr. Lee's opinion. *Statement of Errors*, p. 16. The administrative law judge gave little weight to Dr. Lee's opinion, but

14

she also expressly adopted the opinions of Dr. Stock and Dr. Waggoner and gave "some weight" to Dr. Hammerly's opinion.  *PAGEID* 63-64.  This is simply not a case in which the administrative law judge interpreted raw medical records without the assistance of medical opinions regarding a claimant's abilities.  *See Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008).  Further, the RFC determination is an administrative finding of fact reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004), and the administrative law judge, in formulating a claimant's RFC, is not required to parrot medical opinions *verbatim*.  Rather, an administrative law judge may adopt portions of a medical opinion and reject others in making the RFC determination.  *See Neace v. Comm'r of Soc. Sec.*, No. 5:11-cv-00202-KKC, 2012 WL 4433284, at *8 (E.D. Ky. Sept. 25, 2012); *Deaton v. Comm'r of Soc. Sec.*, No. 1:10-cv-00461, 2011 WL 4064028, at *6 (S.D. Ohio Sept. 13, 2011); *Carroll v. Comm'r of Soc. Sec.*, No. 1:09cv2910, 2011 WL 3648128, at *10 (N.D. Ohio Aug. 18, 2011).

It is well-settled that the Commissioner's decision, if supported by substantial evidence, must be affirmed even if the plaintiff's position is also supported by substantial evidence.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  Because the administrative law judge correctly applied the standards of the treating physician rule to her evaluation of Dr. Lee's opinion, and because substantial evidence supports her findings, the Court finds no error with the Commissioner's decision in this regard.

15

The administrative law judge adopted the opinions of Drs. Stock and Waggoner because they are "well supported by the evidence in the record." *PAGEID* 63.  Plaintiff contends that the administrative law judge erred in making this finding because those opinions were based on an incomplete review of the record. *Statement of Errors*, pp. 17-18.  Plaintiff specifically argues that Drs. Stock and Waggoner did not have the benefit of Dr. Lee's February 2011 opinion or prescription of Fluoxetine for depression. *Id*.  Plaintiff's arguments are not well taken.

"There is no regulation or case law that requires the [administrative law judge] to reject an opinion simply because medical evidence is produced after the opinion is formed." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11-cv-828, 2013 WL 121813, at *7 (S.D. Ohio Jan. 9, 2013).  "Indeed, the regulations provide only that an [administrative law judge] should give more weight to an opinion that is consistent with the record as a whole." *Id*. (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).  In the case presently before the Court, the administrative law judge had the opportunity to review the entire record, including Dr. Lee's treatment notes and February 2011 opinion. She accorded greater weight to the opinions of Drs. Stock and Waggoner because they were "well supported by the evidence in the record." *PAGEID* 63.  The Court agrees that the opinions of Drs. Stock and Waggoner are supported by the medical evidence and, as discussed *supra*, the administrative law judge did not err in assigning little weight to Dr. Lee's opinion because it was inconsistent with the

objective medical evidence and with plaintiff's own testimony and activities.

In short, the Court concludes that the decision of the Commissioner applied all appropriate standards and is supported by substantial evidence. That decision must, therefore, be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

October 29, 2013                              *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge

17